# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PENELOPE CLARKE, as personal
representative of the Estate of Howard Pickard,
        Plaintiff,

    v.                                      Case No. 01-C-0961

FORD MOTOR COMPANY, and
FORD GENERAL RETIREMENT PLAN,
        Defendants.

## DECISION AND ORDER

Plaintiff Penelope Clarke, as the personal representative of her deceased father, Howard Pickard ("Pickard"), a former employee of Ford Motor Company and a participant in Ford's retirement plan (collectively "Ford"), brought an action under the Employee Retirement Income Security Act ("ERISA") seeking unpaid retirement benefits. Pursuant to plaintiff's motion, I certified the suit as a class action, see Clarke v. Ford Motor Co., 220 F.R.D. 568 (E.D. Wis. 2004) ("Clarke I"). I then granted plaintiff's motion for summary judgment. See Clarke v. Ford Motor Co., 343 F. Supp. 2d 714 (E.D. Wis. 2004) ("Clarke II"). However, the ground on which I granted summary judgment raised a question about whether plaintiff was a proper class representative and prompted Ford to request that I decertify the class and reconsider the grant of summary judgment. I now address these motions.

## I. BACKGROUND

Pickard worked for Ford from 1954 to 1966. On February 6, 1975, he reached age sixty-five and, in March 1975, became eligible to receive normal retirement benefits.

However, he did not then apply for such benefits. Effective July 1, 1994, Ford eliminated its "age seventy rule," which provided that employees who separated from service prior to January 1, 1976 and did not apply for benefits until they were over seventy could not receive benefits. After eliminating the rule, Ford sent a "benefits letter" to 291 former employees whom it believed might be eligible for benefits because of the change. As a result of the letter Pickard and 160 others applied for benefits. Ford concluded that all of the applicants were entitled to benefits commencing on the effective dates of their applications but not for periods prior to such dates.

Pickard argued that he was entitled to benefits retroactive to March 1975, but Ford disagreed. Subsequently, plaintiff commenced the present action. Plaintiff moved to certify the suit as a class action with the class consisting of the 161 Ford retirees who received the 1996 letter and applied for and received prospective but not retroactive benefits. Ford opposed the motion on several grounds, one of which was that Pickard's claim was not typical of those of putative class members because he was an early retiree who received the benefit letter by mistake, whereas they were deferred vested retirees.[1] Although the language of Pickard's plan differed from that of the plans covering putative class members, I was unpersuaded that the differences were such that Pickard's claim was atypical.

---

[1] Under Ford's retirement plans, an early retiree was an employee with ten years of service who was over fifty-five upon separation from Ford whereas a deferred vested was an employee with ten years of service who was under fifty-five when he left Ford.

2

## II. DISCUSSION

Ford makes the same argument in support of its decertification and reconsideration motions: that Pickard is entitled to benefits, but that class members are not. I conclude that the argument is best addressed in the context of the motion to decertify.[2] A court's initial determination to certify a class "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); see also Binion v. Metro. Pier and Exposition Auth., 163 F.R.D. 517 (N.D. Ill. 1995) (stating that as developments in the class litigation occur, federal courts remain free to modify or vacate class certification order if it should prove necessary). "A district court's decision to decertify a class is committed to its sound discretion." O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 409 (C.D. Cal. 2000) (citing Knight v. Kenai Peninsula Borough Sch. Dist., 131 F.3d 807, 806 (9th Cir. 1997)).

A court may decertify a class if the requirements of Fed. R. Civ. P. 23 are not satisfied. See O'Connor, 197 F.R.D. at 410. "The party seeking decertification should

---

[2]Ford presumably moves to reconsider under Fed. R. Civ. P. 54(b), which provides that an interlocutory decision "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties." Under Rule 54(b), a motion to reconsider is appropriate where: the court has misunderstood a party; the court has made a decision outside the adversarial issues presented to the court by the parties, the court has made an error of apprehension (not of reasoning); a significant change in the law has occurred; or significant new facts have been discovered. Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). Ford argues that I made a decision outside the adversarial issues presented to the court by the parties because my analysis of Ford's liability for retroactive benefits focused only on the language of Pickard's plan not on the language of class members' plans. However, in certifying the class, I concluded that the differences between the plans were immaterial and that Pickard was an appropriate representative of the class. Thus, the only plan language properly at issue in the motion for summary judgment was that of Pickard's plan. My decision appropriately addressed the "adversarial issues" presented by the parties and did not go "outside" those issues. Thus, Ford's motion to reconsider is an imperfect vehicle for addressing its argument.

3

bear the burden of demonstrating the elements of Rule 23 have not been established." Slaven v. BP Am., Inc., 190 F.R.D. 649, 651 (C.D. Cal. 2000). Under Rule 23, the maintenance of a class action is proper if the class satisfies the four requirements set out in Rule 23(a), i.e., numerosity, commonality, typicality, and adequacy of representation, and satisfies one of the subparts of Rule 23(b). See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620-21 (1997). In the present case, I found that plaintiff had satisfied the requirements of Rule 23(a) and that of Rule 23(b)(2), which authorizes a class action "if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." See Clarke I, 220 F.R.D. at 579-81.

In analyzing a motion to decertify a class action, I may consider a previous decision concerning the merits of the case. See O'Connor, 197 F.R.D. at 410 (explaining that although courts should not consider the merits of the case in considering a motion to certify, this rule "cannot possibly mean that the Court must ignore its rulings and the case history" in considering a motion to decertify because "[t]he Court has made legal and factual rulings that, absent good cause, will not change. It is apparent that the Court is free to rely on these rulings even though the rulings go to the merits of Plaintiffs' case."); see also Fed. R. Civ. P. 23, Advisory Committee Notes, 2003 Amendments (stating that "[a] determination of liability after certification . . . may show a need to amend the class definition"). Moreover, I may also consider the merits of issues that are relevant to one of Rule 23's certification requirements. See Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 677 (7th Cir. 2001) (noting that in deciding whether class certification is warranted, "nothing in the 1966 amendments to Rule 23, or the opinion in Eisen[ v. Carlisle &

Jacquelin, 417 U.S. 156, 177-78 (1974)] prevents the district court from looking [to the merits of a case] to conduct the inquiries identified in that rule and exercise the discretion it confers").

Ford argues that I should decertify the class because my decision on the merits indicates that plaintiff's claim is not typical of the claims of the class as Rule 23(a) requires. A class representative's claim is typical if it has "the same essential characteristics as those of the putative class." Clarke I, 220 F.R.D. at 579 (citing De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)). Typicality does not require a complete identity of claims. Id. Nevertheless, the premise of the typicality requirement is that "the named plaintiff who proves his own claim would also prove the claim of the entire class." Gesell v. Commonw. Edison Co., 216 F.R.D. 616, 624 (C.D. Ill. 2003); see also Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998) (explaining that "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class"). Where the premise does not hold true, class treatment is inappropriate. Gesell, 216 F.R.D. at 624. Ford argues that plaintiff's claim is not typical of the class because it is based on different plan language such that she is entitled to benefits but the class members are not.

In Clarke II, Ford argued that under Pickard's plan[3] a participant had to apply for benefits as a condition of eligibility to receive them and, accordingly, plaintiff did not become eligible for benefits until 1996 when he applied for them. Reviewing Ford's denial of retroactive benefits under the arbitrary and capricious standard, I concluded that Pickard's plan did not make application for benefits a condition of eligibility, and that therefore Ford's interpretation of the plan was unreasonable. Clarke II, 343 F. Supp. 2d at 723.

However, the plan language applicable to the members of the class is different.[4] Article V, Section 5C in the 1965 GRP, relating to the eligibility requirements for deferred vesteds, states:

---

[3]The relevant plan language provides:

The monthly normal retirement benefit payable on or after January 1, 1965 out of the Retirement Fund for a member eligible therefor who shall make application to the Committee therefor, shall be whichever of the following is applicable:
. . . .
(3) For a member who shall retire on or after September 1, 1961, an amount equal to $4.25 multiplied by the number of his years of credited service at retirement;

provided, however, that no benefit shall be payable to any person having less than 10 years of credited service upon normal retirement.

(J.A. tab 1 at F00325) (footnotes omitted).

[4]As discussed, when I certified the class, I did not appreciate the significance of the different language as I do after having ruled on the summary judgment motions. Moreover, I am not bound by my earlier decision that the differences in the language were insignificant. See, e.g., Kuehner v. Heckler, 778 F.2d 152, 163 (3d Cir. 1985) (indicating that a court must monitor its own decisions relating to class action status).

> [n]otwithstanding any other provision in the Plan, any active member who shall incur a break in the continuity of his service on or after June 1, 1955, and if incurred before September 1, 1964 after he shall have reached his 40th birthday, and (i) who then shall have 10 or more years of creditable service, and (ii) who shall not be eligible for or receiving any other type of retirement benefit under the Plan based (in whole or part) on service prior to the date of such break in the continuity of his service, shall be eligible, upon making due application therefor, to receive a deferred vested retirement benefit as provided in Article VI, Section 4 of the Plan.
>
> Application for a deferred vested retirement benefit must be made to the Committee by an applicant otherwise eligible therefor not earlier than 90 days prior to the date on which he elects to have his benefit commence as provided in Article VI, Section 4 of the Plan, and not later than his 70th birthday; otherwise no deferred vested benefit shall be payable to him at any time.

(J.A. tab 1 at F00322) (footnotes omitted). The plan plainly states that the conditions of eligibility for receiving benefits are reaching age forty, having more than ten years of creditable service, not being eligible for or receiving any other type of retirement benefit under the plan, and applying for benefits.

Thus, Ford's view that the language applicable to deferred vesteds makes application a condition of eligibility is reasonable.[5] See Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 463 (7th Cir. 2001) (holding that a construction of a plan that ignores its plain language is unreasonable); see also Swaback v. Am. Info. Tech. Corp., 103 F.3d 535, 540-41 (7th Cir. 1996) (explaining that plan language should be interpreted as would a person of average intelligence and experience); cf. Clarke II, 343 F. Supp. 2d at 720 (concluding that the interpretation of plan language applicable to early retirees as making application a condition of eligibility was "linguistically nonsensical"). Further, the

---

[5] For the same reasons that I applied the arbitrary and capricious standard in Clarke II, I apply the arbitrary and capricious standard of review to Ford's interpretation of the plan language governing deferred vesteds. See Clarke II, 343 F. Supp. 2d at 719.

second paragraph of Article V, Section 5C contains the age seventy rule,[6] and also supports Ford's interpretation that application is a condition of eligibility. If application were not a condition of eligibility, the word "otherwise" in the phrase "otherwise eligible" would be superfluous. An ERISA plan is a contract, Herzberger v. Standard Ins. Co., 205 F.3d 327, 330 (7th Cir. 2000), and should not be interpreted to render language superfluous. Brown & LaCounte, L.L.P. v. Westport Ins. Corp., 307 F.3d 660, 663 (7th Cir. 2002) (stating that language in a contract should be construed as having a purpose rather than avoided or rendered meaningless).

Plaintiff unpersuasively argues that Article V, Section 5C does not make applying for benefits a condition of eligibility. She contends that the phrase, "who shall not be eligible for or receiving any other type of retirement benefit," indicates that a person may be eligible to receive benefits without applying for them. However, such phrase refers to "other type[s] of retirement benefit[s]," not to deferred vested retirement benefits. Plaintiff also argues that other sections of the class members' plan support her view that such plan is like plaintiff's. (See Article VI, Section 4, setting forth the retirement benefit payment schedule and stating that benefits are payable after a retiree's "(i) 65th birthday, and (ii) he shall have filed a timely application for such benefits . . ." (J.A. tab 1 at F00330)); (see also Article XVI, Section 2, outlining the disposition of retirement funds upon termination of plan and providing "deferred vested retirement benefits to those former members eligible therefor who are 65 or over on the date of discontinuances but who have not made

---

[6]Even though Ford removed the age seventy rule from its plans in 1994, thus prompting the letters to Pickard and class members, the rule sheds light on the remaining plan language.

8

application for the same . . ." (J.A. tab 1 at F00361).)  Plaintiff's reliance on these provisions, however, is misplaced because they do not define the eligibility requirements applicable to deferred vested retirees.  (See  Article VI, Section 4, stating that benefits are payable to a retiree "who shall be eligible for a deferred vested pension benefit under the provisions of Article V, Section 5C." (J.A. tab 1 at F00330).)  Moreover, to the extent that these provisions are inconsistent with Article V, Section 5C, the eligibility requirements control.  (See Article V, Section 5C stating that the eligibility requirements, which include applying for benefits, apply "notwithstanding any other provision of the plan." (J.A. tab 1 at F00322).)

Further, the cases I cited in support of my conclusion that Ford's interpretation of the plan governing Pickard's retirement was unreasonable do not apply to the deferred vesteds because, as explained above, Article V, Section 5C clearly makes application a condition of eligibility. See Clarke II, 343 F. Supp. 2d at 723 (discussing relevant authority). Unlike in those cases, in the present case, "the substantive requirement of eligibility as opposed to the payment of benefits" is "conditioned upon an application."  Baird v. Teamsters Affiliates Pension Plan, 317 F. Supp. 2d 588, 596 (W.D. Pa. 2004).

Thus, Ford's interpretation of the language of the class members' retirement plan is reasonable.  Therefore, plaintiff's claim is not typical of those of class members, and as a result, the typicality requirement in Rule 23(a)(3) is not satisfied.  As discussed, the premise of the typicality requirement is that "the named plaintiff who proves his claim would also prove the claim of the entire class." Gesell, 216 F.R.D. at 624.  In the present case, Pickard proved his claim based on a ground not applicable to the class.  Thus, his claim

9

does not share the "essential characteristics" of the claims of the class. See De La Fuente, 713 F.2d at 232. Thus, decertification is appropriate.

Moreover, although the typicality requirement does not require that all class claims be shared, Clarke I, 220 F.R.D. at 527, the other claims that plaintiff presented in Clarke II do not provide a basis for maintaining the class action. This is so because none of the other claims that plaintiff presented are winners. The premise of the typicality requirement is that "the named plaintiff who proves his own claim would also prove the claim of the entire class," see Gesell, 216 F.R.D. at 624, and plaintiff's other claims do not help the class. In Clarke II, I rejected plaintiff's arguments for benefits based on ERISA's non-forfeiture rule, § 1053(a), the retroactive payment rule and Ford's alleged breach of fiduciary duty. I did not need to reach plaintiff's argument based on the existence of a common law presumption against forfeiture but I am not persuaded that plaintiff (or the class) would prevail on such argument.

As I mentioned in Clarke II, relying on an alleged common law presumption against forfeiture of pension benefits announced in Amory v. Boyden Assoc., Inc., 434 F. Supp. 671, 673 (S.D.N.Y. 1976), plaintiff argues that she was entitled to retroactive benefits. However, in Fremont v. McGraw-Edison Co., 606 F.2d 752, 755 (7th Cir. 1979), the Seventh Circuit upheld a denial of benefits because of "the inapplicability of [ERISA's nonforfeiture provision – § 1053(a)] to one whose employee status ends before the effective date of [the nonforfeiture provision]." Thus, the Seventh Circuit does not appear to recognize a pre-§ 1053(a) federal common law presumption against forfeiture. Fremont also suggests that the notion of a pre-§ 1053(a) presumption against forfeiture contradicts Congressional intent, explaining that early drafts of § 1053(a), the nonforfeiture provision,

10

"extended the vesting provisions to include 'participants,' defined in ERISA to include former employees . . . but the section which was ultimately enacted is restricted to 'employees.' If Congress had intended [the nonforfeiture provision] to affect interests of former employees, it would have used the term participant." Id. at 755 n.3; see also Bruchac v. Universal Cab Co., 580 F. Supp. 295, 303 (N.D. Ohio 1984) (rejecting the Amory presumption against the forfeiture of benefits and concluding that plaintiff's right to benefits was governed by the language of the pension plan).

Plaintiff also cites Department of Labor Opinion Letter No. 77-32, (Lewis Supp. Aff. tab B), stating that applying for benefits is a ministerial act and that a failure to timely apply should not be treated as a basis for forfeiture. However, in light of the plan language providing that application for benefits is more than a ministerial act, the Department of Labor Opinion Letter is not enough to enable plaintiff to prevail on her presumption against forfeiture argument. See Cvelbar v. CBI Illinois Inc., 106 F.3d 1368, 1376 (7th Cir. 1997) (holding that a Department of Labor Opinion letter does not bind the court).

Even if a common law presumption against forfeiture exists, it is unlikely that all or even most class members could recover retroactive benefits. This is so because the presumption only applies to forfeitures of benefits occurring between January 1, 1975 and January 1, 1976. A deferred vested retiree would only forfeit his benefits during 1975 if he reached age 65 in 1975. (See Article VI, Section 4 stating that deferred vested retirees' benefits become payable at age 65 (J.A. tab I at F00330).) The record does not establish how many, if any, deferred vested retirees satisfy this requirement.

11

Thus, in the present case, plaintiff cannot escape the problem that she wins and the class does not. Thus, decertification is warranted.[7]

### III. NOTICE

Under Rule 23(e), notice of the proposed settlement, dismissal or compromise of a class action must be given to all members of the class in such manner as the court directs. One of the bases for this rule is that the statute of limitations for absent members' individual claims – which is tolled when a class complaint is filed – will resume running when the class is dismissed, and that the absent members may therefore have a due process right to notification. Glidden v. Chromalloy Am. Corp., 808 F.2d 621, 627 (7th Cir. 1986). The notification requirement also applies when a class is decertified. "[D]ecertification has the same effect on the members of the class, so far as the running of the statute of limitations is concerned, as dismissal of the class action–it is tantamount to dismissal–and so it should be treated the same under Rule 23(e)." Culver v. City of Milwaukee, 277 F.3d 908, 915 (7th Cir. 2002). Another path to the conclusion that a class should be notified upon decertification is Fed. R. Civ. P. 23(c)(1), which provides that an order certifying a class "may be altered . . . prior to entry of judgment." "Part of any order

---

[7]Class certification is also no longer appropriate under Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) provides for certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." In Clarke I, I concluded that Ford "refused to act on grounds generally applicable to the class" when Ford "failed to pay pension benefits to the 161 former employees" and plaintiff alleged that "Ford's arguments as to why it is not required to pay such benefits are largely the same with respect to each class member." Clarke I, 220 F.R.D. at 580. This is no longer true. Ford now agrees that it must pay retroactive benefits to plaintiff but argues that because of the different plan language, it is not obliged to pay such benefits to class members.

'altering' the certification [by decertifying a class] should be a provision for notice to the class members." Id. Thus, in ordering decertification, I have a duty "to order notice unless the risk of prejudice to absent class members is nil and to review for adequacy the form of notice proposed by class counsel in response to the order." Id.

In the present case, the fact that I certified the action as a class action has received no publicity. Further, because I certified the class under Rule 23(b)(2), no notice has been sent to class members. Moreover, there is no indication that any class member has learned of the case. Accordingly, the risk of a class member missing the statute of limitations period for his own individual action as a result of the decertification of the class is "nil." Id. Thus, I will not require class counsel to notify class members of the decertification order.

### IV. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that Ford's motion for class decertification is **GRANTED**, that the class is **DECERTIFIED**, and that the order granting certification is **VACATED**.

**FURTHER, IT IS ORDERED** that Ford's motion for reconsideration is denied as **MOOT**.

**IT IS FURTHER ORDERED** that a telephone conference will be held on **June 29, 2005 at 10:30 a.m.** The court will initiate the call.

Dated at Milwaukee, Wisconsin, this ____ day of June, 2005.

_____
LYNN ADELMAN
District Judge

13