# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PENELOPE CLARKE, as personal
representative of the Estate of Howard Pickard,
        Plaintiff,

    v.                                                         Case No. 01-C-0961

FORD MOTOR COMPANY, and
FORD GENERAL RETIREMENT PLAN,
        Defendants.

## DECISION AND ORDER

In this ERISA action, plaintiff Penelope Clarke, the personal representative of her deceased father Howard Pickard, obtained retirement benefits from Ford Motor Company's General Retirement Plan (I will refer to defendants collectively as "Ford") and now seeks attorney's fees. The relevant facts of the case may be briefly summarized: Ford sent a letter to a number of former employees including Pickard stating that they might be eligible for benefits. Pickard applied for benefits and Ford paid them commencing as of the date of Pickard's application but declined to pay benefits covering the period prior thereto. Pickard died, and plaintiff commenced the present action seeking such benefits. In support of her claim, plaintiff made arguments based on plan language, the non-forfeiture and retroactive benefits rules, the common law presumption against forfeiture and breach of fiduciary duty. Plaintiff also sought to represent 161 other Ford retirees. Over Ford's objection, I certified plaintiff's suit as a class action. See Clarke v. Ford Motor Co., 220 F.R.D. 568 (E.D. Wis. 2004). I then granted plaintiff's motion for summary judgment on liability holding that Pickard's plan entitled her to the benefits at issue but rejecting her

other arguments. See Clarke v. Ford Motor Co., 343 F. Supp. 2d 714 (E.D. Wis. 2004). After my summary judgment decision and pursuant to Ford's motion, I re-examined whether Pickard's plan differed materially from that of other class members and concluded that it did. Therefore, I decertified the class and entered judgment for plaintiff in the amount of $93,686.38. See Clarke v. Ford Motor Co., 228 F.R.D. 631 (E.D. Wis. 2005). Ford satisfied the judgment.

Turning to plaintiff's request for attorney's fees, under ERISA, a court may award "reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1); see also Quinn v. Blue Cross and Blue Shield, Ass'n, 161 F.3d 472, 478 (7th Cir. 1998). To obtain a fee award, a party must establish that it is a "prevailing party."[1] Quinn, 161 F.3d at 478; see also Lowe v. McGraw-Hill Cos., 361 F.3d 335, 339 (7th Cir. 2004). A prevailing party is "one who has succeeded on any significant issue in litigation which achieve[d] some of the benefit the part[y] sought in bringing suit" so that the party is able to "point to a resolution of the dispute which changes the legal relationship between itself and the [opponent]." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 (1989) (internal citations and quotations omitted); see also Farrar v. Hobby, 506 U.S. 103, 111 (1992) (stating that "a plaintiff 'prevails' when actual relief on the merits

---

[1] Although ERISA does not state that a party must prevail to receive a fee award, the Seventh Circuit in effect imposes such a requirement. See Poteete v. Capital Eng'g, Inc., 185 F.3d 804 (7th Cir. 1999) (noting that the "principles that sometimes entitle a party to recover his attorney's fees limit that entitlement to prevailing parties");Quinn, 161 F.3d at 478 (describing the processes by which an ERISA party may be awarded attorney's fees "after it has attained 'prevailing party' status"); Marquardt v. N. Am. Car Corp., 652 F.2d 715, 718 n.2 (7th Cir. 1981) (recognizing that a court is more likely to find appropriate an award to a prevailing party than an award to a non-prevailing party); see also Gibbs v. Gibbs, 210 F.3d 491, 501-02 (5th Cir. 2000) (stating that Seventh Circuit decisions only allow prevailing parties to recover attorney's fees in ERISA actions).

2

of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"). A party prevails if it "gets substantial relief . . . even if it doesn't win on every claim." Slane v. Mariah Boats, Inc., 164 F.3d 1065, 1068 (7th Cir. 1999); see also Postma v. Paul Revere Life Ins. Co., 223 F.3d 533, 542 (7th Cir. 2000) (stating that a party may prevail without winning all of her arguments). Inasmuch as she "achieved some of the benefit she sought in bringing suit," plaintiff is a prevailing party.

However, being a prevailing party does not automatically entitle plaintiff to fees. Although "there is a modest presumption in favor of awarding attorneys' fees to the prevailing party, . . . that presumption may be rebutted" by evidence that the losing party's position was substantially justified or that special circumstances make an award unjust. Senese v. Chi. Int'l Bhd. of Teamsters Pension Fund, 237 F.3d 819, 826 (7th Cir. 2001). Ford argues that its position was substantially justified. "Substantially justified" means "something more than non-frivolous, but something less than meritorious–and taken in good faith . . .." Prod. & Maint. Employees' Local 504 v. Roadmaster Corp., 954 F.2d 1397, 1404 (7th Cir. 1992). A position is substantially justified if it is "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988).[2] I make one determination on the issue of

---

[2]Although Pierce addressed fees under the Equal Access to Justice Act, the Supreme Court has stated that its rulings under one fee-shifting statute are generally applicable to others. See, e.g., City of Burlington v. Dague, 505 U.S. 557, 562 (1992); see also Trustmark Life Ins. Co. v. Univ. of Chicago Hosps., 207 F.3d 876, 884 (7th Cir. 2000) (applying Pierce to address fees under ERISA § 1132(g)).

3

substantial justification for the entire case. Comm'r, INS v. Jean, 496 U.S. 154, 159 (1990); see also United States v. Hallmark, 200 F.3d 1076, 1080-81 (7th Cir. 2000).

Some courts employ a five-factor test to determine whether a party's position was substantially justified. See Quinn, 161 F.3d at 478. They do so to "structure or implement, rather than to contradict, the 'substantially' justified standard." Lowe, 361 F.3d at 339. The five factors include: (1) the offending party's blameworthiness or bad faith; (2) the offending party's ability to pay attorney's fees; (3) the deterrent effects of a fee award; (4) any benefit to plan members; and (5) the merits of the parties' positions. Quinn, 161 F.3d at 478. A party need not satisfy all five factors to receive attorney's fees, Bradley v. Capital Eng'g & Mfg. Co., 678 F. Supp. 1330, 1335 (N.D. Ill. 1988), and no one factor is determinative, Greenblatt v. Prescription Plan Servs. Corp., 783 F. Supp. 814, 828 (S.D.N.Y. 1992). In the present case, I will use the five-factor test to structure my discussion of the substantial justification issue.

As to the first factor, Ford did not act in bad faith, but it failed to comply with 29 C.F.R. § 2560.503-1(g)(1)(ii), which required it to reference the provision on which it based its denial of benefits to plaintiff and to explain the reasoning underlying its conclusion that the language of the plan justified such denial. Clarke, 343 F. Supp. 2d at 718. Neither its letter notifying plaintiff of its denial of her initial appeal nor that notifying her of the General Retirement Plan Committee's adverse decision contained the required reference or explained Ford's reasoning. Thus, Ford exhibited blameworthiness. See Spearman v. Motorola Disability Income Plan, 279 F. Supp. 2d 1057, 1050 (S.D. Iowa 2003) (stating that in failing failure to follow administrative procedures, defendant "exhibited some level of culpability" and thus satisfied the first factor); see also Cerra v. Harvey, 279 F. Supp. 2d

4

778, 788-89 (S.D. W.Va. 2003) (stating that defendant's failure to provide a reasoned explanation for suspension of benefits satisfied the first factor). Thus, the first factor weighs in favor of awarding attorney's fees.

The second factor also weighs in favor of an award. Ford has the ability to pay fees. See Scarso v. Briks, 909 F. Supp. 211, 215 (S.D.N.Y. 1996) (stating that when nothing in the record indicates that the offending party cannot pay fees, the second factor favors an award). The third factor also favors an award because an award will deter plan administrators from attempting to justify plan interpretations that are inconsistent with the plan language. See Priority Solutions, Inc. v. CIGNA, No. 98 Civ. 4336, 1999 U.S. Dist. LEXIS 17605, at *12 (S.D.N.Y. Nov. 8, 1999) (stating that the third factor is satisfied if plan administrators are deterred from ignoring plan language); see also Spearman, 279 F. Supp. 2d at 1050 (stating that the third factor was satisfied when, "[b]y awarding fees, the Court . . . encourage[s] defendant to act expeditiously and appropriately in the future").

The fourth factor weighs in favor of an award only if the plaintiff represents "a broad class of beneficiaries," or the case involves a "significant legal question regarding ERISA itself." Spearman, 279 F. Supp. 2d at 1050. Plaintiff did not represent a broad class of beneficiaries, and because it dealt with events long past, the case did not raise a significant ERISA issue. Thus, this factor does not support a fee award. However, the fifth factor, the merits of the parties' positions, weighs in favor of an award. I concluded that Ford interpreted its plan in a manner "inconsistent with the plan's plain language" and that its interpretation was "linguistically nonsensical." Clarke, 343 F. Supp. 2d at 720. I also found that Ford failed to articulate a satisfactory explanation for such denial. Id. at 721; see

5

Marcus v. Shalala, 17 F.3d 1033, 1038 (7th Cir. 1994) (indicating that strong language against a party's position on the merits of a key issue satisfies the fifth factor).

In sum, four of the five relevant factors favor an award. Thus, I will award attorney's fees to plaintiff.[3]

Turning to the amount of the award, I must award "reasonable" fees. 29 U.S.C. § 1132(g)(1); see also Frichter v. Health Care Serv. Corp., 301 F.3d 811, 819 (7th Cir. 2002). To determine reasonableness, I employ the "lodestar" approach. See Hackett v. Xerox Corp. Long-Term Disability Income Plan, 355 F. Supp. 2d 931, 935 (N.D. Ill. 2005); see also Heder v. City of Two Rivers, 255 F. Supp. 2d 947, 952 (E.D. Wis. 2003). To ascertain the lodestar, I determine the number of hours reasonably expended and the reasonable hourly rate and multiply the two figures. Batt v. Micro Warehouse, Inc., 241 F.3d 891, 893-94 (7th Cir. 2001); see also Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001). The resulting amount is presumed to be reasonable. City of Burlington, 505 U.S. at 562. However, I may increase or decrease the lodestar based on a variety of factors. See, e.g., Bankston v. Illinois, 60 F.3d 1249, 1255 (7th Cir. 1995).

As to the hours reasonably expended, plaintiff must prove reasonableness and exclude "excessive, redundant or otherwise unnecessary expenses." Batt, 241 F.3d at 894; see also Stark v. PPM Am., 354 F.3d 666, 674 (7th Cir. 2004) (stating that hours are not "reasonably expended" if they are excessive, redundant, or otherwise unnecessary).

---

[3]I would reach the same conclusion if I applied the substantial justification test without considering the five factors. See Tesch v. General Motors Corp., 937 F.2d 359, 363 (7th Cir. 1991) (stating that "[i]t is difficult to imagine a situation in which application of one model [of the substantial justification test] rather than the other would alter [the] decision concerning the propriety of an award of costs or fees").

6

If plaintiff fails to exclude such expenses, I must. Batt, 241 F.3d at 894. In the present case, plaintiff seeks fees for 608.75 hours expended by Siegel, Brill, Greupner, Duffy & Foster PA ("Siegel"),[4] and 85.35 hours expended by the firm of Houseman & Feind ("Houseman").[5]

Ford argues that plaintiff's claim includes excessive, redundant, or otherwise unnecessary hours. First, it contends that because twelve timekeepers billed hours, plaintiff's request involves unnecessary duplication. However, scrutiny of plaintiff's billing records does not support Ford's assertion. Attorney Jordan Lewis billed the majority of hours claimed by plaintiff, 659.4 out of 989.4. Seven of the twelve timekeepers billed less than thirty hours and worked primarily on discrete issues. (See, e.g., Pl.'s Br. in Support of M. for Attorneys' Fees Ex. 1) (indicating that ZZA researched §§ 411 and 401 of ERISA; that ZZC researched treasury regulations, and that MHT researched the motions to enter judgment and for attorney's fees). Further, when a number of lawyers work on a case, some duplication is inevitable. See Housing Rights Ctr. v. Sterling, No. CV 03-859, 2005 U.S. Dist. LEXIS 31872, at *21-22 (C.D. Cal. Nov. 2, 2005) (stating that "[i]t is true that there is inherent duplication in any case staffed by more than one person. Attorneys and paralegals must discuss the case with one another, bring each other up to date on developments that only one has become aware of, strategize, etc. But this fact of litigation

---

[4]Siegel breaks this number down as follows: Jordan Lewis 477.9 hours; Wood Foster 22.2 hours; WCP 13.3 hours; Brian Weisberg 56.1 hours; ZZA 5.25 hours; ZZC 27.6 hours; MAT 4.9 hours; MHT 1.5 hours.

[5]Because Houseman did not supply an hour total, I calculated this number by taking the hours in its billing statement, 197.35, and subtracting the number of hours it excluded, 112.

7

does not make such 'duplication' unreasonable or preclude an award of fees for this unavoidable aspect of having more than one timekeeper working on a matter"); see also Alba Conte, Attorney Fee Awards § 4:9, n.19 (3rd ed. 2004) (explaining that "[l]awyers who jointly represent plaintiffs will usually have to duplicate some underlying efforts"); id. § 4:9, n.17. In the present case, I find only de minimis duplication and, accordingly, decline to reduce plaintiff's claimed hours because twelve timekeepers worked on the case.

I agree with Ford, however, that plaintiff does not justify the presence of four lawyers at the settlement conference and will therefore exclude the hours of two lawyers who participated minimally in the conference (8 hours from Robert L. Feind and 11.5 hours from WCP). See Singer v. Shannon & Luchs Co., 779 F.2d 69, 70-71 (D.C. Cir. 1985) (stating that "[a]bsent some explanation, a fee attributable to expenses incurred by several attorneys in attendance at hearings . . . would appear to be excessive"); see also Nat'l Ass'n of Concerned Veterans v. Sec. of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982) (stating that fees are not recoverable for non-productive time).

Ford argues that plaintiff's lawyers' billing statements contain vague references to interoffice meetings and telephone conferences without stating the subject matter. However, I find few such entries and will not reduce plaintiff's hours on this score. See Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd., No. 02-C-0391-C, 2003 WL 23095743, at *2 (W.D. Wis. Nov. 6, 2003) (stating that infrequent entries in a time record do not warrant reducing the amount of hours).

8

Thus, I conclude that Siegel reasonably expended 597.25 hours and Houseman 77.35 hours.[6]

Turning to the question of a reasonable rate, the rate "should reflect the 'market rate' for the attorney's services," Batt, 241 F.3d at 894, i.e., the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question, Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 555 (7th Cir. 1999); see also Pressley v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992) (stating that in determining the "market rate," the question is "what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). Plaintiff must establish the market rate by producing "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). Such evidence may include "affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work." Spegon, 175 F.3d at 556. If plaintiff establishes the market rate, "the burden shifts to the defendant to demonstrate why a lower rate should be awarded." Id. at 554. In the present case, the relevant community is Milwaukee.

Addressing first the rates of Siegel lawyers, plaintiff seeks $350 per hour for Lewis's time. Lewis states that during the course of the litigation, he billed at rates of between $250 and $350 per hour with the rate gradually increasing over time. Plaintiff also submits

---

[6]I break down Siegel's hours as follows: Lewis 477.9 hours; Foster 22.2 hours; WCP 1.8 hours; Weisberg 56.1 hours; ZZA 5.25 hours; ZZC 27.6 hours; MAT 4.9 hours; MHT 1.5 hours.

9

an affidavit from an experienced Milwaukee litigator, Beth Kushner, stating that highly qualified litigators in Milwaukee command hourly rates of $350 to $450. Lewis is a highly qualified litigator. He ably argued complex ERISA and class action issues in the present case and has litigated ERISA cases in Arizona, California, Connecticut, Iowa, Minnesota, North Dakota, Ohio and Rhode Island. Thus, plaintiff has established that $350 per hour is a reasonable rate for Lewis's services.

Plaintiff asks for $450 per hour for Foster's services but submits no evidence that this is his usual rate. However, Foster is at least as experienced as Lewis, and I will therefore reduce his hourly rate to Lewis's, $350. Plaintiff asks for $280 per hour for WCP and $250 per hour for Weisberg but presents no documentation supporting such requests. Ford asks me to award WCP and Weisberg $180 per hour, the rate charged by its lawyers.[7] However,

> [p]revailing hourly rates of the defense counsel are usually lower than those charged by the plaintiffs' counsel for noncontingent cases for various practical reasons, including the fact that the defense counsel normally represent clients with whom they have an ongoing relationship and, therefore, can adjust rates downward in expectation of payment for future work encompassing certain levels of time expenditures, in contrast to the plaintiffs' counsel, who usually will represent a client on a one-time basis. Even when defense clients retain counsel on a one-time litigation basis, the defense counsel are in a much better position than the plaintiffs' counsel to anticipate the level of time expenditure that will be required for the case, a factor with significant economic consequences.

Conte, supra, § 6:9. I will approve a rate for WCP and Weisberg equal to the average rate in the Milwaukee area, $204 per hour. See State Bar of Wis., Economics of Law Practice

---

[7]Ford does not object to the proposed rates of other timekeepers, and because such rates appear to be reasonable, I will approve them.

10

2005 Survey Report 4 (Feb. 2006); see, e.g., American-Arab Anti-Discrimination Comm. v. City of Dearborn, No. 03-70235, 2006 U.S. Dist. LEXIS 5598, at *8-9 (E.D. Mi. Jan. 30, 2006) (awarding averages according to the Michigan bar survey); Conte, supra, § 6:9 (stating that plaintiff can establish the reasonableness of hourly rates by referencing studies in the relevant community).

Plaintiff seeks rates of $315 per hour for Houseman lawyers Feind, Michael P. Herbrand, Steven M. Cain, and Sherry B. Peiffer and presents evidence that these lawyers previously billed at such rate. Although a billing rate for comparable work is a "presumptively appropriate" marker, Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 407 (7th Cir. 1999), plaintiff does not demonstrate that the above counsel billed this rate in cases comparable to the present one, see Bamber v. Elkhart Cmty. Sch., No. 3:01-CV-10 RM, 2005 U.S. Dist. LEXIS 5883, at *9 (N.D. Ind. Mar. 28, 2005) (minimizing weight to be accorded past hourly rate when plaintiff failed to identify type of case); see also Chraplivy v. Uniroyal, Inc., 670 F.2d 760, 767 (7th Cir. 1982) (stating that "[a] judge may well approach high rates with skepticism, and he may exercise some discretion in lowering such rates. For example, . . . an attorney may bill at a high rate but rarely collect that rate."). Plaintiff also does not show that the requested rate is the market rate in Milwaukee for attorneys with comparable experience. Thus, for Feind, Herbrand, Cain and Peiffer, I will approve the average rate charged by Milwaukee attorneys in 2005, $204.[8]

---

[8] Defendant argues that using a 2005 rate "would not be appropriate since this rate was not in effect during the entire time period the case was pending." (Defs.' Br. in Opp'n at 8 n.5). However, I may use current hourly rates rather than historic rates in order to compensate attorneys for delay in payment. See, e.g., King v. Board of Regents, 748 F. Supp. 686, 690 (E.D. Wis. 1990) (citing Missouri v. Jenkins by Agyei, 491 U.S. 274, 283-84 (1989)).

11

After making the appropriate calculations, I conclude that the Siegel's lodestar is $193,573.40,[9] Houseman's is $15,779.40, and the total lodestar is $209,352.80. Although the lodestar is a presumptively reasonable fee, I may adjust it in light of such factors as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3.

The party seeking an adjustment must establish that it is necessary. City of Burlington, 505 U.S. at 562. The most important factor in connection with adjusting the lodestar is the "'degree of success obtained.'" Spegon, 175 F.3d at 550 (quoting Hensley, 461 U.S. at 436). This is particularly true when a plaintiff has prevailed on some but not all claims. Hensley, 461 U.S. at 434.

> When claims are interrelated . . . time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims. In such cases, much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

---

[9] I base this sum on the following numbers: Lewis 477.9 hours ($350); Foster 22.2 hours ($350); WCP 1.8 hours ($204); Weisberg 56.1 hours ($204); ZZA 5.25 hours ($140); ZZC 27.6 hours ($75); MAT 4.9 hours ($80); MHT 1.5 hours ($150).

12

Jaffee v. Redmond, 142 F.3d 409, 413 (7th Cir. 1998) (citing and quoting in part Hensley, 461 U.S. at 434-35) (internal quotation marks omitted). Thus, an attorney can recover for losing arguments, if raised in support of successful claims, and for losing claims, if raised in tandem with successful ones. Hensley, 461 U.S. at 414.

Hensley reduces these considerations to a two-part test. Id. at 434. I first ask whether plaintiff's unsuccessful claims were related to her successful ones, i.e., whether they arose out of a common core of facts or were based on related legal theories. If I find the claims related, I ask whether plaintiff achieved a level of success that justifies an award. Id. In addressing the second question, I consider the results achieved but not whether plaintiff prevailed on each legal claim or theory. Jaffee, 142 F.3d at 414. I may reduce the lodestar when it is excessive given the degree of success. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. Thus, if a plaintiff achieved limited success, I should "award only that amount of fees that is reasonable in relation to the results obtained." Id. at 435.

Ford argues that I should discount the lodestar because plaintiff's unsuccessful claims, i.e., her claims based on the non-forfeiture and retroactive payment rules, the common law presumption against forfeiture, and breach of fiduciary duty were unrelated to her successful claim, which was based on the language of Pickard's plan. However, all of plaintiff's claims arose out of a common core of facts – Ford's refusal to pay retroactive benefits to Pickard. Plaintiff's unsuccessful claims were alternative theories of recovery. A court should not discount the lodestar merely because alternative legal theories are rejected. Webster Greenthumb Co. v. Fulton County, Ga., 112 F. Supp. 2d 1339, 1352 (N.D. Ga. 2000). Thus, I disagree with Ford's contention that plaintiff's alternate arguments

13

were unrelated to her individual claim and decline to adjust the lodestar on such ground.

Ford also argues that I should reduce the lodestar because plaintiff's individual claims were unrelated to the class claim and because she did not succeed on the class claims. While I cannot say that plaintiff's individual and class claims were unrelated, I agree that plaintiff's lack of success on the class claims justifies a reduction in the award. As plaintiff obtained no benefits for the class, the hours expended on the class claims do not form a "satisfactory basis for making a fee award." Hensley, 461 U.S. at 434; see also Gravely v. City of Philadelphia, No. 90-3620, 1998 U.S. Dist. LEXIS 12411, at * 22 (E.D. Pa. Aug. 12, 1998) (stating that when a class certification motion is denied, hours spent in its pursuit "cannot be deemed to have been expended in pursuit of the ultimate result achieved"); Webster Greenthumb Co., 112 F. Supp. 2d at 1254 (concluding that plaintiff could not recover attorney's fees for time spent on an unsuccessful motion to certify a class).

I conclude that in order for the fee award to be reasonable in relation to the results achieved, I must deduct the hours plaintiff's attorneys expended on the class claims. Cf. Dechert v. Cadle Co., Nos. 04-4213, 05-1359, 2006 U.S. App. LEXIS 6389, at *2-3 (7th Cir. Mar. 16, 2006) (stating that when a lawsuit accomplishes nothing, no attorney's fees should be awarded). In the present case, plaintiff accomplished nothing on behalf of the class, thus, I cannot justify an award of fees. According to my calculations, plaintiff's attorneys spent the following hours on class-related issues: Lewis 156.65; Foster 22.2; Weisberg 6.7; WCP 1.8; ZZC .3; Houseman lawyers 34.35. Subtracting such hours from the hours I previously deemed reasonable, the compensable hours are Lewis 321.25 hours; Foster 0 hours; Weisberg 49.4 hours; WCP 0 hours; ZZC 27.3 hours; ZZA 5.25

hours; MAT 4.9 hours; MHT 1.5 hours; Houseman lawyers 43 hours. Applying the appropriate rates results in Siegel fees of $125,914.60, Houseman fees of $8,772 and total fees of $134,686.60.

Defendant also suggests that I should reduce the award because plaintiff's request is disproportionate to the damages she recovered. However, proportionality between fees and damages is not required. Spegon, 175 F.3d at 558. "To hold otherwise would in reality prevent individuals with relatively small claims from effectively enforcing their rights." Hodgson v. Miller Brewing Co., 457 F.2d 221, 228-29 (7th Cir. 1972). In the present case, plaintiff obtained $93,686.38, and her attorneys will recover $134,686.60. Such award is neither unreasonable nor disproportionate. Courts often award more in attorneys' fees than in damages. See, e.g., Laborers' Pension Fund v. McKinney, No. 98C5482, 2000 U.S. Dist. LEXIS 16778, at *6 (N.D. Ill. Nov. 15, 2000) (noting that a fee of over $8,000 was not exorbitant, even in light of the $2,000 awarded in damages); see also Wallace v. Mulholland, 957 F.2d 333, 339 (7th Cir. 1992) (rejecting contention that Supreme Court requires "correspondence between the degree to which a plaintiff has financially prevailed and the attorney fees awarded to him").[10]

For the reasons stated,

---

[10]Plaintiff also seeks $5,318.39 in costs and defendant objects to this amount. I need not deal with this issue presently as in this district, the Clerk of Court decides requests for costs. Civil L. R. 54.1 requires that a party seeking costs must, within fourteen days after the entry of judgment, "serve on the attorney for the adverse parties and file with the Clerk of Court the party's bill of costs." After service, "[t]he party against whom costs are sought to be taxed has 10 days to file a written objection, accompanied by a brief memorandum. The party seeking to tax costs has 5 days to respond and the objecting party has 5 days thereafter to reply. Costs will be taxed by the Clerk of Court on the basis of the written memoranda."

15

**IT IS ORDERED** that plaintiff's motion for attorneys' fees is **GRANTED** in the amount of $134,686.60.

Dated at Milwaukee, Wisconsin this 21 day of March, 2006.

/s_____
LYNN ADELMAN
District Judge